**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MANUEL DE JESUS GUERRA,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 98-1771

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A73-711-865)

Submitted: October 30, 1998

Decided: December 17, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Ana T. Jacobs, Washington, D.C., for Petitioner. Frank W. Hunger,
Assistant Attorney General, Kristen A. Giuffreda, Senior Litigation
Counsel, Linda S. Wernery, Office of Immigration Litigation, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Manuel De Jesus Guerra seeks review of the decision of the Board of Immigration Appeals (BIA) denying relief on his application for asylum and withholding of deportation.

Guerra, a native and citizen of Guatemala, entered the United States without inspection in 1994. The record evidence established that from 1992 through mid-1994, Guerra was a member of the Democratic Christian Party in Guatemala. As a member, he attended meetings, distributed flyers, and recruited members. On September 19, 1994, unidentified civilian individuals, who Guerra claimed in his asylum application were guerrillas, visited Guerra's home while he was out. They told his mother that if Guerra continued his activities with the Christian Democratic Party, they were going to assassinate him. The individuals also left a note for Guerra to this effect. The following day, Guerra reported the threat to the police and gave the note to them. The police filed a report and said that they were "going to keep an eye out and be watching to see what happens." That same night, while Guerra spent the night at a friend's house, unidentified individuals in civilian clothing again came to Guerra's house looking for him. The individuals identified themselves as police officers, but Guerra's mother recognized one of the men from the night before.

Guerra's mother insisted that Guerra leave for the United States, which he did the next day by crossing through Mexico. Guerra indicated that he had had no prior problems at Christian Democratic Party meetings, and offered no other evidence that he himself had been persecuted, or that other Party members were currently subject to persecution on account of political affiliation. The 1996 State Department Profile indicates that as of 1995, the guerrilla movement in Guatemala was significantly smaller than it had been in the 1980s, and that the few remaining guerrillas were concentrated in certain remote areas.

2

Thus, individuals fleeing guerrilla harassment are able to reside peacefully in other areas of Guatemala. The report further provides that generally only party leaders or high-profile activists in political parties are subject to any politically-based harassment, and then only in their home communities.

The immigration judge (IJ) found Guerra credible but ineligible for asylum. On appeal the BIA adopted but expanded on the IJ's decision, finding that Guerra failed to show he suffered past persecution, failed to introduce any meaningful evidence that anyone in Guatemala has a current interest in him, and failed to show that any similarly-situated individuals in Guatemala face persecution, particularly on a country-wide level.

Substantial evidence supports the BIA's determination that Guerra is not eligible for asylum. See INS v. Elias-Zacarias, 502 U.S. 478, 482-83 (1992). Although Guerra experienced one threat in 1994, he offered no evidence that he would be threatened or in any way persecuted were he to now return to Guatemala. Guerra likewise offered no evidence that other members of the Christian Democratic Party face persecution by the guerrillas or by any other groups. See 8 U.S.C.A. § 1101(a)(42)(A) (West Supp. 1998); Cruz-Diaz v. INS, 86 F.3d 330, 332 (4th Cir. 1996); Aruta v. INS, 80 F.3d 1389, 1395-96 (9th Cir. 1996). Finally, although a few guerrilla groups may operate in remote areas of Guatemala, the record shows that Guerra could relocate to other areas of Guatemala where he could live in peace. See In re C-A-L, Interim Dec. 3305, 1997 WL 80985, at *4 (BIA Feb. 21, 1997); Matter of Acosta, 19 I. & N. Dec. 211, 235-36 (1985).*

_____

*Guerra claims the BIA failed to consider the State Department's Country Reports on Human Rights Practices, which was not introduced into the record. We note that the alien has the burden of proving he qualifies as a refugee under the Immigration and Nationality Act. See 8 C.F.R. § 208.13(a) (1998). If Guerra wished to rely on information contained in the Country Report to meet his burden of proof, he could have introduced it as part of the record. Although the INS generally has an obligation to introduce country background information even when the alien fails to do so, here general background information on country conditions in Guatemala was made part of the record in the State Department Profile of Asylum Claims and Country Conditions. See In re S-M-J, Interim Dec. 3303, 1997 WL 80984, at *5-6 (BIA Jan. 31, 1997).

3

The standard for withholding deportation is more stringent than that for granting asylum. <u>See INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 430-32 (1987). Because Guerra failed to show entitlement to asylum, he cannot meet the higher standard for withholding deportation.

Our review of the record discloses that the BIA's decision is based upon substantial evidence and is without reversible error. Accordingly, we affirm on the reasoning of the Board. We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

4